## GENERAL COURT, OCTOBER TERM, 1799.

### THE BANK OF COLUMBIA *vs.* D. ROSS.

FIERI FACIAS, under the act of assembly of 1793, *ch.* 30, *s.* 14, entitled, "*An act to establish a Bank in the District of Columbia*," issued on the 14th of August 1799, and directed to the sheriff of Prince-George's county; also duplicates of the said writ, directed to the sheriffs of Washington and Allegany counties. [Vide the form of the writ in 2 *Harr. Ent.* 637, 638.] The sheriffs to whom the writ and duplicates were directed, made returns, "*laid as per schedule on real and personal property, and unsold,*" &c,

MOTION on the part of the defendant to *quash* the execution.

The case appears to be as follows: On the 3d of April 1799, *Horatio Ross,* by his note, sixty days after date, promised to pay to *David Ross,* (the defendant,) or order, (at the house of Mr. *James M. Lingan,* George Town,) $ 5518 for value received, negotiable at the Bank of Columbia. *David Ross* endorsed to *Archibald Ross,* who endorsed to *James M. Lingan,* who endorsed to the president, directors and company, of the Bank of Columbia, in the usual manner. The note was duly protested on the 6th of June 1799, for nonpayment. The president of the bank, on the 27th of July 1799, duly notified the drawer, and each of the endorsers, that the bank was in possession of the note, and that the amount thereof was due; they were therefore respectively demanded

and required to pay the amount of the principal, interest, and cost of protest, immediately. There was proof produced of a service of this notice. The president, by an affidavit annexed to the said note, made oath on the 14th of August 1799, before a justice of the peace, "that the said *Horatio Ross*, the drawer of, and *David Ross* and *Archibald Ross*, endorsers on, the annexed note, are justly and *bona fide* indebted on the said note to the president, directors and company, of the Bank of Columbia, in the sum of 2093*l.* 15*s.* 9*d.* current money, for principal, interest, and costs of protest; and that the said sum of 2093*l.* 15*s.* 9*d.* current money, is actually and *bona fide* due and owing upon the said note." And by his order to the clerk of the general court, dated the 14th of August 1799, the said president requested the said clerk, upon the receipt thereof with the said note and affidavits, to issue writs of *fieri facias* against the said *Horatio Ross, David Ross* and *Archibald Ross,* all of Prince-George's county, in the name of the president, directors and company, of the Bank of Columbia, for the sum of 2093*l.* 15*s.* 9*d.* current money, and the costs of the writs which the said clerk should issue, pursuant to the directions of the act of assembly, entitled, "An act to establish a bank in the District of Columbia." He also, by a *postscript,* required duplicates of each writ, one to the sheriff of Prince-George's, and one to the sheriff of Washington county. Accordingly on the 14th of August 1799, three several writs of *fieri facias* were issued by the clerk of the general court, and were delivered to the sheriff of Prince-George's county on the 29th of the said month. On the 14th of August 1799, the defendant, *(David Ross,)* executed a deed of trust of all his property to *William Steuart,* which deed was recorded on the 16th of August 1799, amongst the records of the general court.

Application was made to the clerk of the general court for the executions, between the hours of 6 and 7 o'clock P. M. on the 14th of August 1799, and after the usual time of shutting the office. It was admitted that the deed was executed before the execution issued.

*Harper* and *Johnson,* for the motion, contended, that the execution ought to be quashed, for the following reasons:

1. That it was a joint debt, and that several executions ought not to have issued.

2. That the affidavit does not state how they were indebted.

3. That the direction is to issue the executions for a greater sum than is due.

Oct. 1799.

Bank of Columbia.
vs.
Ross.

Oct. 1799.

Bank of Columbia.
vs.
Ross.

4. That the execution is no lien on the property as if it had issued on a judgment regularly obtained; and

5. That under the will of Doctor *Ross*, the land seized under this *fieri facias* is not answerable in the hands of the defendant.

1. The debt is stated to be due from the drawer and endorsers; and for a joint debt a joint execution must issue. If it is a separate debt due from each, several executions could not issue. The party must make his election which to issue against. The affidavit of the president states, that *H. Ross* is indebted as drawer, and others as endorsers, in a certain sum. This must mean that they are jointly indebted. The act of assembly gives a special authority, which must be pursued strictly. If it does not appear that all the requisites have been complied with, the authority is defective. If the execution has not issued pursuant to the authority given to the bank, the clause giving a power to traverse cannot make the case better. It must appear by the papers transmitted to the clerk that he had authority to issue the executions. Similar to the case of a land commission where the return, that *due notice* had been given, deemed defective—*Weems vs. Disney. (a)*

2. The affidavit is in the nature of a declaration and judgment, so that the party may traverse. Suppose execution against the endorser, proof of notice to the endorser of the default of the drawer in not paying, should appear so as to shew the liability of the endorser. So also a demand of, and notice to, the drawer, must be set out. Powers in derogation of the common right must be strictly pursued. The necessary requisites to shew *David Ross* indebted do not appear.

3. The execution, by the act of assembly, is to issue for the sum mentioned in the note. Costs of protest not contemplated. The execution cannot issue for a cent more than what is due upon the note, and the costs of the protest cannot be included. They are costs which do not grow out of the note, but arise from the party's own act. The execution is confined to the amount of principal and interest due on the note. The act of assembly says the money *mentioned* in the note, and not the money due.

4. The lien is constituted by the judgment, and not by the execution, and here there is no judgment; so that when the lien attached on the real estate, if at all, cannot be ascertained. The execution cannot create a lien on the real estate. With respect to the personal estate the lien is only from the time of the delivery of the execution to the sheriff, and not from the date of the writ

*(a)* Ante page 156.

—*Bull. N. P.* 91. The deed to *Stewart* was executed before the writ issued, and it has been regularly recorded in the records of the general court, and also in the records of the county, within 20 days; so that it operates as well upon the personal as it does upon the real estate, and is not situated as the deed in the case of *Gassaway vs Dorsey.* (a)

5. This is a trust estate under the will of Doctor *Ross,* and cannot be affected at law. He devised his lands to his executrix to sell for the purpose of paying debts and legacies. On the death of the executrix it descended to all the children of the testator, three sons and five daughters, and the estate is undivided, and is not liable to be taken under this execution. A devise to sell for payment of debts passes a fee. When the devise is that the executor *shall sell,* the executor is only a trustee—*Co. Litt.* 236, a. 2 *Burr.* 1027. 2 *P. Wms.* 308. At most the execution could only affect the defendant's one eighth undivided part. The real dispute is between the creditors of the defendant, and the legatees under the will of Doctor *Ross.* The deed to *Stewart* is for the payment of the debts due from Doctor *Ross,* and the legacies bequeathed by him. The question is on the operation of the execution and the trust deed.

*Mason,* against the motion. The act of assembly, giving the special authority in this case, has not prescribed any form of proceeding.

1. In answer to first reason assigned for quashing the execution. The order of the president of the bank states that *Horatio Ross* is the drawer, *David* and *Archibald Ross* are the endorsers. It shews the manner in which the debt was created, and the relations in which they stand, and shews it is not a joint debt, but that each and all of them are answerable for it. The order to the clerk is to issue *writs* of *fieri facias* against all three of them; and no ingenuity or subtilty of argument can prove one *fieri facias* only was to be issued.

2. The affidavit and note are the grounds of the order; and the conclusion of the order shews that it did not mean duplicates of a joint writ against all. The papers shew separate existing debts against each of them. If the drawer did not pay on demand, the endorsers instantaneously become responsible for the money. The notary's protest shews that notice was given to the endorsers of the default of the drawer in not paying. The defendant ought to contest it before a jury if he was not legally notified, as the fact of notice is to be ascertained by a jury. The power under the act of assembly has been regularly pur-

(a) Ante page 405.

Oct. 1799.

Bank of Columbia
vs.
Ross.

sued, and none of the requisites prescribed have been omitted to be complied with. Under our attachment law, attachments have always issued, as well against the drawer as against the endorser of the note, on affidavit that the debt was *bona fide* due.

3. The costs of protest are due on the note. It is a necessary expense incurred so as to make the endorsers answerable, and the law allows 12s. 9d. to the notary for the protest. If the execution issued for more than was due, it is not void. By the act of assembly an issue can be made up to ascertain the claim, that justice may be done in the speediest manner. What is unnecessarily stated may be rejected as surplussage, and shall not vitiate. The affidavit states that they are in their several capacities of drawer and endorsers indebted in the sum of 2093l. 15s. 9d. for principal, interest, and costs of protest, being the precise sum due on that note.

4. It is said that the execution creates no lien.—Judgments are liens on land from the day of the rendition thereof, and a *fieri facias* at common law binds the goods from the date. It is restricted in certain cases to the time of delivery to the sheriff, by the *statute of frauds,*—29 Car. II. ch. 3. Where there are several things necessary to the completion of an act, the last act done shall have relation to the first efficient act. It must be considered as a judgment, or an execution could not issue. A judicial writ must issue on a judgment. If power is given to confess judgment, and the defendant dies before the judgment, it shall relate to the date of the power of attorney. An execution binds every thing it can affect, from the date. The deed to *Stewart* is not such an one as the statute of frauds contemplates. The statute of frauds only provides for the protection of *bona fide* purchasers.—*Esp.* 392. *Comb.* 145.

5. If an interest is coupled with an authority, it vests in the devisee; if a naked trust, the fee vests in the heir at law.—*Co. Litt.* 236. *a.* The authority shall survive with the office of executor.—*Co. Litt.* 113. *a.* (*Note.*) If intention is to prevail, what is the meaning of Doctor *Ross's* will? He says, "I leave the lands to be sold for payment of debts and legacies, by my executrix, with the consent of my sons." It is denied on the part of the plaintiffs that the debts and legacies of Dr. *Ross* have not been paid. The present defendant is the only person who can shew that they are paid.

*Martin,* (Attorney-General,) on the same side. This motion is to be considered as the motion of *David Ross,* the defendant. The object of the act of assembly, under which this execution has issued, is to enforce a compli-

Oct. 1799.

Bank of Columbia
vs.
Ross.

ance with contracts, and ought to be liberally expounded. No person is affected without his consent; when he goes into bank he knows, if he fails to pay, how he may be proceeded against, and it is the voluntary act of the debtor to subject himself to this summary proceeding. The plaintiffs have strictly complied with the act; they gave notice, the proper notice, that the note was not paid. There is no affidavit required that notice had been given to the endorsers of nonpayment by the drawer. According to the reasoning of the opposite counsel, it ought also to be set forth in the affidavit, that *Horatio Ross* signed the note. The act of assembly only requires that the president should prove what is due on the note. The plaintiffs had a right to issue executions against each; for they might sue the drawer and every endorser in separate actions. If satisfaction is received from one, they cannot proceed against the others.

3. As to the third reason, that the execution issued for a greater sum than it ought. The plaintiffs had a right to recover principal, interest, and costs of protest. It is the practice every day to recover the costs of protest. To bind the endorsers, the note was protested. It is a cost growing out of the note. If the president was mistaken as to the costs of protest, the execution is not to be set aside on that account. For if the debt is disputed, it must be tried by a jury on an issue to be framed for that purpose.

4. The effect of the proceeding, and the operation of the deed, are the grounds of an important question. If the proceeding is not to have the effect of a judgment, it is a reasonable construction to say the execution shall bind from the date. The statute of frauds intended to protect *bona fide* purchasers; and a *fieri facias* binds from its date, unless in the case of a *bona fide* purchaser. The statute of frauds has not been adopted in this state, as to writs of *fieri facias* binding from the delivery of the writ to the sheriff. It has been adopted only in favour of *bona fide* purchasers. The deed to *Stewart* has been executed fraudulently as to the bank. Where an execution issues, land must be bound in some manner. A *fieri facias* must operate in the same manner, with respect to lands, as it does to goods and chattels, if there is no antecedent lien. The statute of frauds has never been introduced into *Maryland* as to writs of *fieri facias* binding personal property; nor was it introduced before the revolution as to judgments binding land. There is no instance of mention having been made on the docket of the day when any of the judgments before the revolution were rendered; nor any instance of mention being made of the time when the sheriff received a writ of *fieri facias*, nor is it

Oct. 1799.

Bank of Co-
lumbia
vs.
Ross.

the practice at this time for the sheriff to endorse when the writs of *fieri facias* were received. What persons are secured against a *fieri fac as* binding from the date? Suppose there are two writs of *fieri facias* against the same person, and the first delivered to the sheriff is the last which is executed; it binds from the delivery as to purchasers from the sheriff, and binds from the date for some purposes. In 2 *Vent.* 218, a *fieri facias* issued before the death of the defendant, and delivered after his death to the sheriff. There was no judicial decision that the writ was to bind from the delivery only as to purchasers. *Comb.* 33. 145—A *fieri facias* issued before may be executed after the death of the defendant. *Skin.* 257 —Sales *in market overt* only, are protected, by the statute of frauds. In 1 *Ld. Ray.* 252, there were two writs of *fieri facias*, the first issued was the last delivered to the sheriff. And *per Holt,* Ch. J. the *teste* of the writ binds against all sales and acts of the party himself. The sole object of the statute of frauds was to protect innocent purchasers at the sheriff's sale. It made no change in the common law only as to purchasers. It was only intended to secure the possession of purchasers under an execution; and a *fieri facias* binds from the *teste* against all acts and sales made by the party himself—1 *T. R* 731.

5, The interest of the defendant in this case, of one eighth part of the property taken under the *fieri facias,* is liable to be sold. The whole property by the will of Dr. *Ross* is charged with the payment of debts and legacies. There was to be no sale by the executrix without the consent of her sons—It depends on the intention of the testator, to be collected from the will—2 *Burr.* 1027. What was the intention of Dr. *Ross?* Could he mean that no one should take benefit until the debts and legacies were paid? It is plain that he did not.

*Key,* for the motion, in reply. This is a joint debt against the endorsers, for there is nothing to sever them; and can several executions issue against them? Look at the order from the president. The court can intend nothing. The affidavit does not shew any debt due from the endorsers. The endorsement does not create a debt. How then does it appear that they are liable? What is sufficient notice is a question of law. The endorsers are only liable in default of the maker, after due notice— *Esp.* 35, 57. The note is dated the 3d of April 1799, and it does not appear that the endorsers had reasonable notice. The authority is void, because it includes the costs of protest. A new remedy, unknown to the common law, is to be strictly construed—4 *Bac. Ab.* 653, *s.* 96, 97. Where there is no remedy given at common

Oct. 1799.

Bank of Co-
lumbia
vs.
Ross.

law, and a remedy is given by statute, it is to be con-
strued strictly—1 *Stra.* 253. As to the lien by *fieri fa-
cias*—whether the statute of frauds has been adopted
in this state must depend on practice. By relation of
the proceedings to the *teste* of the writ, all mesne pur-
chases are defeated to the great injury of purchasers.
The statute is to protect all purchases before the writ is
delivered to the sheriff. The clauses are different with
respect to real and personal property. The *fifteenth
section* of the statute is as to lands, which are bound
from the day of signing the judgment. The *sixteenth
section* is general, that a *fieri facias* binds the pro-
perty only from the delivery of the writ to the she-
riff. 3 *Salk.* 159—As the goods were bound from the
day of the *teste* of the writ of *fieri facias* at common
law, so now by 29 *Car. H. ch.* 3, they are bound from
the day of the delivery of the writ to the sheriff. *Esp.*
392. 2 *Eq. Cas. Ab.* 381. 2 *Bac. Ab.* 365—No sale af-
ter the delivery of the writ to the sheriff is good, *unless
in market overt*, or the debtor becoming a bankrupt as-
signs them. Goods delivered to pay a debt is as effec-
tual as if they were sold to pay a debt. As to 2 *Vent.*
218—The statute was made for the benefit of strangers;
and transfers, for a valuable consideration made between
the *teste* and the delivery of the writ to the sheriff, are
protected. As to *Comb.* 33, 145—The executor being
privy, the *fieri facias* may be executed after the death of
the defendant, if it issued before. The statute was not
made for the benefit of the party, and the *fieri facias*
binds the party and the executor from the *teste*. *Skin.*
257, is explained by *Esp.* 392, and 2 *Eq. Cas. Ab.* 381.
A purchaser in market overt is aided, and sales in mar-
ket overt are protected by the statute. The opinion of
Lord *Holt*, in 1 *Ld. Ray.* 252, that the *teste* of the writ
binds against all sales and acts of the party himself, is
an *obiter* opinion. In 1 *T. R.* 731—The goods of the
party are bound by the delivery of the writ, and al-
though the possession of an innocent vendee shall not be
disturbed, yet as to all the rest of the world the goods
are bound from the delivery of the writ.

CHASE, Ch. J. delivered the following opinion:
In determining the question, whether the execution in
this case issued irregularly or without legal authority, it
will be necessary to consider the act of assembly, enti-
tled, "An act to establish a bank in the District of Colum-
bia," passed at November session 1793, *ch.* 30.
It is a well established rule in expounding acts of the
legislature, that the intention of the makers must prevail;
which intention is to be collected from the words they
have used.

OCT. 1799.

Bank of Columbia
vs.
Ross.

It appears by the preamble, that n the opinion of the general assembly, the agricultural and commercial interests of the state would be promoted by establishing a Bank in the District of Columbia; and they have declared, that to support the said bank it was absolutely necessary the debts due to the bank should be punctually paid. To effect which they have authorised a summary, facile, and expeditious mode of recovery, without infringing the right to a trial by jury where the debtor controverts the claim made by the president of the bank.

The establishment of a bank in the District of Columbia, being in the opinion of the assembly an institution of public utility, the punctual payment of the debts due to it being necessary to support it, and the right to a trial by jury not being infringed, there is nothing in the way to restrict the court from giving an exposition to the act corresponding with and effectuating the intention of the makers of it.

The great object of the clause under which the present proceeding is to be supported, is to secure a punctual payment of the debts due to the bank, and for that purpose authorises a summary proceeding against the debtor, by way of execution, grounded on the order of the president of the bank.

There is no form prescribed in which the order is to be clothed; but certain requisites are to be complied with to justify the president in making the order, and to warrant the clerk in issuing execution on it. The person proceeded against must be indebted for monies borrowed, or by bond, bill or note, given or endorsed; and he must have consented in writing that the same be made negotiable at the bank. On neglect to make payment at the time stipulated, the president is to cause a demand to be made, in writing, on the delinquent; or if not to be found, to be left at his last place of abode; and if the money is not paid within ten days after demand made, or notice left, it shall and may be lawful for the president to write to the clerk of the general court, and send to the clerk the bond, bill or note, due, with proof of the demand made as aforesaid, and order the clerk to issue execution; and the clerk is required to issue such execution on which the debt and costs may be levied and shall be as valid and effectual in law, to all intents and purposes, as if issued on a judgment regularly obtained in the court to which the execution is returned. According to a proviso, execution is not to issue until the president makes oath ascertaining whether the whole or what part of the debt is due on the said note, which oath is to be filed by the clerk.

The obvious intention of the act is, that every thing due on the note should be paid with the costs incurred by

the default of the person against whom the execution is to issue.

The sum due is to be ascertained by the oath of the president, which oath is to be filed by the clerk. The execution issues in consequence of, and pursuant to the order of the president, which is the foundation, and the execution must conform to it, being the authority on which the clerk is warranted in issuing an execution, without a judgment, in the ordinary course of proceeding, being obtained. If the debtor disputes the claim made by the president, a trial may be had, and a jury will ascertain what is due.

When a note is endorsed and not paid, the holder of the note, after the demand made of the drawer, and notice to the endorser of nonpayment, may institute suits against each; the debt being several and not joint, and several executions must issue, and although only one satisfaction can be obtained, he is entitled to the costs in all the suits.

It appears in this case how they are indebted—by note, one as a drawer, and the others as endorsers, and the same note and proof supports the claim against each. *(a)*

THE COURT *overruled* the motion to *quash* the execution.

That part of the act of November session, 1793, ch. 30, upon which the proceedings in this case were had, is as follows:

*Section 14.* "Whereas, it is absolutely necessary that the debts due to the said bank should be punctually paid, to enable the directors to calculate with certainty and precision on meeting the demands that may be made upon them, BE IT ENACTED, That whenever any person or persons are indebted to the said bank for monies borrowed by them, or for bonds, bills or notes, given or endorsed by them, with an express consent in writing that they may be made negotiable at the said bank, and shall refuse or neglect to make payment at the time the same become due, the president shall cause a demand [of payment to be made] in writing, on the person of the said delinquent or delinquents, having consented as aforesaid, or if not to be found, have the same left at his last place of abode; and if the money so due shall not be paid within ten days after such demand made, or notice left at his last place of abode as aforesaid, it shall and may be lawful for the president, at his election, to write to the clerk of the general court, or of the county in which the said

*(a)* The Reporters regret, that they could not procure the opinion of the court upon the other questions decided in this case.

Oct. 1799.

Bank of Columbia
vs.
Ross.

delinquent or delinquents may reside, or did at the time he or they contracted the debt reside, and send to the said clerk the bond, bill or note due, with proof of the demand made as aforesaid, and order the said clerk to issue *capias ad satisfaciendum, fieri facias*, or attachment by way of execution, on which the debt and costs may be levied, by selling the property of the defendant for the sum or sums of money mentioned in the said bond, bill or note; and the clerk of the general court, and the clerks of the several county courts, are hereby respectively required to issue such execution or executions, which shall be made returnable to the court, whose clerk shall issue the same, which shall first set after the issuing thereof, and shall be as valid and as effectual in law, to all intents and purposes, as if the same had issued on judgment regularly obtained in the ordinary course of proceeding in the said court, and such execution or executions shall not be liable to be stayed or delayed by any supersedeas, writ of error, appeal, or injunction from the chancellor; provided always, that before any execution shall issue as aforesaid, the president of the bank shall make an oath, (or affirmation, if he shall be of such religious society as allowed by this state to make affirmation,) ascertaining whether the whole, or what part of the debt due to the bank on the said bond, bill or note, is due; which oath or affirmation shall be filed in the office of the clerk of the court from which the execution shall issue, and if the defendant shall dispute the whole, or any part of the said debt, on the return of the execution, the court before whom it is returned shall and may order an issue to be joined, and trial to be had the same court at which the return is made, and shall make such other proceedings that justice may be done in the speediest manner."